# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON

**CHARLES DOGAN, JR.,**

      **Petitioner,**

**v.**                              **Case No. 2:13-cv-01035**
                                          **Case No. 2:96-cr-00066**
                                        **Case No. 2:91-cr-00055**

**UNITED STATES OF AMERICA,**

      **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is the petitioner's Petition for a Writ of Error Coram Nobis (Case No. 2:13-cv-01035, ECF No. 1; Case Nos. 2:91-cr-00055, ECF No. 124; Case No. 2:96-cr-00066, ECF No. 169), filed on January 17, 2013. Since the filing of the petition, the petitioner has also filed two addenda to the petition (Case No. 2:13-cv-01035, ECF Nos. 4 and 5; Case No. 2:91-cr-00055, ECF Nos. 127 and 128; Case No. 2:96-cr-00066, ECF Nos. 172 and 173).[1] This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

The petitioner is presently incarcerated at FCI Oakdale in Oakdale, Louisiana. According to his Federal Bureau of Prisons sentence computation, the petitioner has discharged the 24-month sentence imposed on April 8, 1997, as a result of the

---

[1] For ease of reference, henceforth, when citing to the petition documents, the undersigned will only cite the civil action (Case No. 2:13-cv-01035) docket numbers.

revocation of his supervised release in Case No. 2:91-cr-00055, and he is presently serving a consecutive 288-month sentence imposed on that same date for his conviction on one count of possession with intent to distribute cocaine base in Case No. 2:96-cr-00066.

The petitioner has filed a Petition for a Writ of Error Coram Nobis under 28 U.S.C. § 1651(a), which is an action to correct errors of a most fundamental character when the petitioner is no longer serving the subject sentence, and circumstances compel such action to achieve justice. *United States v. Sullivan*, 278 F. Sup.. 626 (D. HI. 1968).

On April 19, 1996, while the petitioner was serving a three-year term of supervised release imposed in Case No. 2:91-cr-00055, a petition to revoke his supervised release was filed by United States Probation Officer Keith Zutaut, charging him with two separate instances of possession and distribution of crack cocaine, on April 9 and April 16, 1996. The petitioner was subsequently indicted on charges arising out of the same conduct addressed in the petition, as well as additional counts of possession with intent to distribute and distribution of crack cocaine on other dates in April of 1996. (Case No. 2:96-cr-00066) (hereinafter "the indictment").

The petitioner ultimately pled guilty, pursuant to a written plea agreement, to Count Six of the indictment, which did not encompass the conduct addressed in the supervised release revocation petition. The government agreed to dismiss the remainder of the charges in the indictment. The District Court conducted the petitioner's sentencing on the indictment and the revocation hearing at the same time. The petitioner was sentenced to a 24-month term of imprisonment on the revocation petition and a consecutive sentence of 288 months on the count in the indictment.

*The grounds raised in the petition*

The instant petition is somewhat difficult to comprehend, but it appears that the petitioner is asserting that the 24-month consecutive sentence he received upon the revocation of his three-year term of supervised release was improper because, in his plea agreement, the government agreed to dismiss the charges in the indictment that arose out of the same conduct, thus, allegedly rendering him "innocent" of those charges. (Case No. 2:13-cv-01035, ECF No. 1 at 1.)  Accordingly, the petitioner also contends that his consecutive 24-month sentence violated his plea agreement and that the court was without subject matter jurisdiction to impose that sentence.  (*Id.* at 2.)

The petitioner further contends that he was improperly assessed with a 2-point enhancement of his criminal history for conduct that allegedly occurred while he was on supervised release, despite the fact that the count to which the petitioner pled guilty involved a controlled buy that occurred on April 25, 1996, which was four days after his term of supervised release expired.  (*Id.* at 2.)  The petitioner also asserts a claim of ineffective assistance of counsel related to these alleged errors at sentencing.  (*Id.*)  The petitioner maintains that these are fundamental errors that rendered his judgment invalid. (*Id.*)

*The petitioner's First Addendum*

In his First Addendum (ECF No. 4.), the petitioner contends that the Probation Officer exceeded his authority by bringing a petition for revocation of supervised release based upon conduct for which the petitioner had not been arrested or charged.  The petitioner contends that the Probation Officer improperly engaged in the investigative process and in obtaining a warrant for the petitioner's arrest, in violation of the petitioner's Fourth Amendment rights.  The petitioner again raises claims of ineffective

assistance of counsel based upon his counsel's failure to raise the issues addressed in his petition and the First Addendum.  (*Id.* at 1-2.)

The petitioner's First Addendum further alleges that the petitioner had reached a favorable plea agreement with the government, which was rejected by the District Court because of the petitioner's prior criminal history.  The petitioner further asserts that, by rejecting that plea, the District Court improperly advocated for a particular sentence, without objection from the petitioner's counsel, which resulted in a less favorable plea agreement and sentence for the petitioner.  The First Addendum further states:

> The petitioner and the Government reached a definite agreement that had been reduced to writing and executed by the petitioner and the government all without any involvement by the district court judge on a previous agreement.  While the judge had yet to accept the plea and approve the agreement, the agreement was final [sic] complete as between the defendant and the government, the negotiations had come to an end. Under the agreement the defendant would have had an opportunity of a more favorable plea and less severe of a sentence had the district judge accepted it.
>
> The district judge rejected it stating "The defendant has a prior drug conviction and a prior 2nd degree murder conviction."  In that context, the judge was advocating for a particular sentence and which is also <u>prejudicial</u> to the defendant.  [Emphasis in original.]
>
> Counsel failed in all of its actual responsibilities by allowing the court to actually negotiate and define the plea bargain. * * * The district court judge committed plain error in the plea-bargaining process, when the judge rejected the first plea agreement to [sic] which would have resulted in a supervise-release violation the court committed error during the sentencing phase by adding an additional 24 months to the sentence that is not in any way connected to the 25th of April 1996 charge.

(ECF No. 4 at 2.)

### *The petitioner's Second Addendum*

In his Second Addendum (ECF No. 5.), the petitioner raises, for the first time, a claim that the District Court committed procedural errors in sentencing, and violated

the petitioner's rights under the Confrontation Clause of the Sixth Amendment, because the court did not require the government to establish the identity of the substance that the petitioner allegedly distributed through the testimony of the lab technician who performed the forensic testing.   In support of this argument, the petitioner cites *DePierre v. United States*, 131 S. Ct. 2225, 180 L. Ed.2d 114 (2011), *Bullcoming v. New Mexico*, 131 S.  Ct. 2705, 2710 (2011) and *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009).  The petitioner asserts that these rulings compel the government to prove the identity of the substance he allegedly possessed and distributed as a element of the offense, and that, when a testimonial certification of lab test results is used, the accused must be confronted with the analyst who conducted the testing and certified the results. (*Id.* at 1.)

The Second Addendum further asserts that the Supreme Court's new interpretation of the drug statute in *DePierre* must be applied on collateral review to prevent a violation of the Due Process Clause.  The Second Addendum further states:

> If the record disclosed at the time of [conviction or plea], neither the accused, nor his counsel, nor the District Court correctly understood the essential elements of the crime with which he was charged then the [conviction/plea] was invalid under the Federal Constitution.

(*Id.*)

Because it is apparent from the face of the petition documents that the petitioner is entitled to no relief, the undersigned has not required the United States to file a response.

## PROCEDURAL HISTORY

### *The petitioner's first federal indictment*

On February 7, 1991, the petitioner was indicted in this court on one count of conspiracy, and two counts of possession with intent to distribute crack cocaine. (*United States v. Dogan*, 2:91-cr-00055, # 1.)[2]  The petitioner pled guilty to all three counts in that indictment on July 16, 1991.  (*Id.*, # 43.)  On September 24, 1991, the petitioner was sentenced by the Honorable John T. Copenhaver, Jr., United States District Judge, to 30 months in prison on each count, with those sentences to run concurrently, followed by a five-year term of supervised release.  (*Id.*, # 47.)  The petitioner did not appeal this judgment.

On April 21, 1993, the petitioner began serving his term of supervised release.  On July 19, 1994, the petitioner filed a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 contending that his term of supervised release should have been three years, not five.  (*Id.*, # 52.)[3]

### *The alleged conduct giving rise to new charges*

On April 9, 1996, while on supervised release, the petitioner allegedly sold quantities of crack cocaine to a confidential informant in two separate controlled buys.  This conduct formed the basis of the two alleged violations in the supervised release revocation petition.  It also formed the basis for Counts One and Two of the new indictment in *United States v. Dogan*, Case No. 2:96-cr-00066.

---

[2]  Due to the age of the case, most of the information concerning this case is taken from a paper docket sheet.  The entries are not scanned into the court's electronic case filing system (CM/ECF).  Accordingly, the undersigned shall refer to the docket entries as "# ____," rather than "ECF No. ____."

[3]   Civil Action No. 2:94-cv-00575 was opened to address this motion; however, all of the documents related thereto are docketed in the criminal case.

On April 11, 1996, the petitioner allegedly engaged in another sale of crack cocaine to a confidential informant. This conduct formed the basis of Count Three in the new indictment.

On April 16, 1996, the petitioner allegedly engaged in another sale of crack cocaine. This alleged purchase was the second instance of conduct that formed the basis of the violations asserted in the revocation petition, as well as Count Four of the new indictment.

On April 18, 1996, the petitioner allegedly engaged in a fifth sale of crack cocaine. This conduct served as the basis of Count Five in the new indictment.

On April 19, 1996, the petitioner's section 2255 motion was granted, and his term of supervised release was reduced from five years to three years. (Case No. 2:91-cr-00055, # 56.) On this same date, United States Probation Officer Keith Zutaut filed a petition for revocation of the petitioner's supervised release based upon the controlled purchases conducted on April 9, 1996 and April 16, 1996. A warrant for the petitioner's arrest was issued that same day.

On April 21, 1996, the petitioner's term of supervised release expired. The petitioner, who had not yet been arrested, allegedly engaged in two other sales of crack cocaine on April 25, 1996. These alleged controlled buys formed the basis of the charges in Counts Six and Seven of the new indictment. The petitioner was arrested on April 25, 1996 on the supervised release revocation warrant.

On April 26, 1996, a preliminary hearing was conducted on the revocation petition, and United States Magistrate Judge Jerry D. Hogg found that there was probable cause to believe that the petitioner had committed the violations contained in the revocation petition. (Case No. 2:91-cr-00051, # 80 at 9.) A final revocation hearing

was scheduled to occur before Judge Copenhaver on May 3, 1996.  On May 2, 1996, the petitioner, by counsel, filed a motion to continue the final revocation hearing.  (*Id.*, # 63.)  That motion was granted and the final revocation hearing was continued to May 21, 1996.  (*Id.*, # 66.)

On May 21, 1996, Judge Copenhaver again continued the petitioner's final revocation hearing pending the resolution of potential new criminal charges arising out of the same conduct upon which the revocation petition was based.  (*Id.*, ## 71, 79.)

<em>The petitioner's second federal indictment</em>

On June 5, 1996, the petitioner was indicted in a seven-count indictment stemming from the seven controlled buys in which the petitioner had allegedly engaged between April 9, 1996 and April 25, 1996.  (Case No. 2:96-cr-00066, ECF No. 1.)  That matter was also assigned to Judge Copenhaver.

On August 21, 1996, the day that the petitioner's trial was set to start, the petitioner appeared for a guilty plea hearing in which the petitioner attempted to enter a guilty plea, pursuant to a written plea agreement (*id.*, ECF No. 31.), to Count Four of the indictment (concerning the April 16, 1996 offense).  However Judge Copenhaver refused to accept that plea, and began the trial.  (*Id.*, ECF No. 30.)[4]  Later that day, however, the petitioner, pursuant to a new written plea agreement (*id.*, ECF No. 29.) pled guilty to Count Six of the indictment (concerning one of the controlled buys that occurred on April 25, 1996).  (*Id.*, ECF No. 28.)

During the plea colloquy, the petitioner acknowledged all of the rights he was waiving by pleading guilty, stated that he was satisfied with the advice his counsel had

---

[4]  This portion of the record has not been transcribed.

8

provided him, acknowledged his guilt and gave an account of the factual basis for his plea in his own words. (*Id.*, ECF No. 43.)

Nevertheless, on January 2, 1997, after a change in counsel, the petitioner moved to withdraw his guilty plea. (*Id.*, ECF No. 53.) A hearing was conducted on January 2 and 3, 1997, during which several witnesses testified. The testimony of these witnesses served to establish the factual basis for the offense of conviction in the indictment, as well as the factual basis of the two alleged supervised release violations. (*Id.*, ECF Nos. 54, 55.) On March 31, 1997, Judge Copenhaver denied the motion to withdraw the guilty plea. (*Id.*, ECF No. 56.)

### *The petitioner's sentencing proceedings*

On April 8, 1997, the petitioner was sentenced to a 24-month term of imprisonment on the supervised release violations, and a consecutive 288-month term of imprisonment on Count Six of the indictment. The sentencing hearing transcript confirms that the parties agreed to rely upon the testimony provided at the hearing on the petitioner's motion to withdraw his guilty plea as the evidence that the court should consider concerning the supervised release violations, and neither party offered any additional evidence. (*Id.*, ECF No. 67 at 35.) The court then made the following findings:

> THE COURT:   The court finds by a preponderance of the evidence that the defendant has violated the terms of his supervised release, in that on April 9, 1996, he sold crack cocaine to Ms. Hurtte in the quantity of .41 gram for $100, and on April 16, 1996, the defendant sold .59 gram of crack cocaine to Mr. Bennett for the sum of $100. The court accordingly finds the defendant has violated the terms of supervised release, both in that he thereby committed another federal, state and local crime on each of those occasions of April 9 and April 16, and similarly violated the further conditions of probation that he not distribute a controlled substance, that being violated by the same two events.

(*Id.* at 36.)   Based upon these violations, the court revoked the petitioner's term of supervised release.  (*Id.*)  Before imposing sentence on the supervised release revocation and on the charge in Count Six of the indictment, counsel for the government moved to dismiss the remaining counts in the indictment, pursuant to the petitioner's plea agreement.  (*Id.* at 37.)  The court granted that motion.  (*Id.* at 48.)

The court stated the following in imposing the petitioner's sentences:

> The court still acknowledges that you face sentencing on both the supervised release revocation and on the offense of conviction.
>
> Insofar as the supervised release revocation is concerned, the guideline range there is 18 to 24 months.  The court is going to sentence you to a term of two years for that violation.   You committed the distribution offense on two occasions that are charged in the petition itself.  And, of course, as we know and as the court has found for other purposes, you really engaged in that kind of conduct on other occasions as well.  But simply looking at it from the standpoint of you having been convicted of an offense relating to drug trafficking and are then placed on supervised release and then commit the very same offense indicates to the court that it is appropriate to sentence you to the maximum of two years for that violation, and the court will do so.
>
> The court's sentence with respect to the offense of conviction that you are before the court on will be made to run consecutively to that sentence.

(*Id.* at 46-47.)  The court then went on to impose a sentence on Count Six of the new indictment.  (*Id.* at 47-48.)

The undersigned notes that, at sentencing, the petitioner stipulated to the quantity of cocaine base possessed during the offense of conviction, but objected to the inclusion of relevant conduct based upon the testimony of John Stinson, and also objected to the denial of a reduction in the guideline offense level for acceptance of responsibility.  The petitioner, however, did not object to the inclusion of a two-point enhancement of his criminal history for the offense allegedly occurring while he was on

supervised release.   The undersigned further notes that the petitioner was found, without objection, to be a career offender, which automatically raised his base offense level to 34, with a criminal history category of VI.   That designation resulted in a sentencing guideline range of 262-327 months, and the District Court imposed a sentence of 288 months.  (*Id.* at 38, 47-48.)

The petitioner's judgment orders were entered on April 9, 1997.  (*Id.*, ECF No. 57; Case No. 2:91-cr-00055, # 87.)

### *The petitioner's direct appeal*

On April 14, 1997, the petitioner filed a Notice of Appeal concerning both his conviction and sentence on the new indictment, and concerning the revocation of his term of supervised release.  (*Id.*, ECF No. 58.)  However, the petitioner's appeal was based only upon the District Court's denial of the petitioner's motion to withdraw his guilty plea, and did not address any of the claims now raised in his *coram nobis* petition. (Case Nos. 97-4292 and 97-4293) (*United States v. Dogan*, 155 F.3d 561, 1998 WL 406854 (4th Cir., July 15, 1998)).  On July 15, 1998, the Fourth Circuit affirmed the judgment of the District Court on both grounds for relief.  (*Id.*)  In affirming the revocation of the petitioner's supervised release, the Court stated:  "Because we find that Dogan does not dispute the facts adduced at the hearing [on the petitioner's motion to withdraw his guilty plea], and only appeals the legal question of whether the court erred in refusing to allow Dogan to withdraw his plea, we affirm the order revoking Dogan's supervised release.  (*Id.* at *2.)

### *The petitioner's section 2255 motion and appeal therefrom*

On February 11, 1999, the petitioner filed a section 2255 motion.  (Case No. 2:99-cv-00011).  The only issue raised in that motion is whether the government failed to

prove, by a preponderance of the evidence, that the defendant possessed "crack" cocaine, and that Congress lacked the authority to impose a separate punishment for "crack" cocaine under 21 U.S.C. § 841(a)(1), as the additional penalty conflicted with another previously enacted statute, 21 U.S.C. § 812. (*Id.*, ECF No. 81.)  Neither of these claims was raised in the petitioner's direct appeal.

On September 7, 1999, United States Magistrate Judge Jerry D. Hogg recommended that the motion be denied based upon procedural default and also on the merits.  (*Id.*, ECF No. 88.)  Judge Copenhaver denied the petitioner's section 2255 motion on May 23, 2000.  (*Id.*, ECF Nos. 92, 93.)

On July 12, 2000, the petitioner filed a Notice of Appeal concerning the denial of his section 2255 motion.  (*Id.*, ECF No. 94.)  On August 21, 2001, the Fourth Circuit denied a Certificate of Appealability and dismissed the appeal.  (*Id.*, ECF No. 104.)

*The petitioner's other challenges to his sentences*

On March 31, 2008, the petitioner filed the first of two motions to reduce his sentence under 18 U.S.C. § 3582 based upon the lowering of the crack cocaine guideline ranges.  (*Id.*, ECF No. 109.)  The petitioner filed his second section 3582 motion on June 25, 2008.  (*Id.*, ECF No. 110.)  Both of those motions were denied on June 23, 2009, on the basis that the petitioner is a career offender and, thus, not eligible for a reduction in sentence based upon the guideline amendments.  (*Id.*, ECF No. 115.)

On April 27, 2010, the Fourth Circuit denied a habeas corpus petition filed under the Court's original jurisdiction, in which he disputed his designation as a career offender and alleged that law enforcement officials involved in his case engaged in

threats and intimidation, and otherwise acted improperly to obtain a fraudulent conviction.[5]  (*Id.*, ECF Nos. 123-126, Case No. 10-1043.)

On November 3, 2011, the petitioner filed a Petition for a Writ of Mandamus in this court, which was originally treated by the court as a section 2255 motion; however, the petitioner objected to that re-characterization.  (*Id.*, ECF Nos. 127, 131.)  Thus, the court ultimately reviewed the document under its mandamus authority.  None of the issues raised in the petition for a writ of mandamus are relevant to the instant proceeding.

On December 15, 2011, United States Magistrate Judge Mary E. Stanley recommended that the Petition for a Writ of Mandamus be denied.  (*Id.*, ECF No. 132.)  On December 15, 2011, Judge Copenhaver adopted Judge Stanley's recommendation and denied the Petition for a Writ of Mandamus.  (*Id.*, ECF Nos. 135, 136.)

On January 17, 2012, the petitioner filed a Motion for Reconsideration of the denial of his Petition for a Writ of Mandamus and requested that Judge Copenhaver recuse himself.  (*Id.*, ECF Nos. 140, 141, 143.)  Those motions were denied by Judge Copenhaver on January 27, 2012.  (*Id.*, ECF No. 142.)

On February 16, 2012, the petitioner filed a Notice of Appeal concerning the denial of his Petition for a Writ of Mandamus.  (*Id.*, ECF No. 145.)  That judgment was affirmed on June 26, 2012.  (*Id.*, ECF No. 163, Case No. 12-6348.)  The petitioner then filed the instant Petition for a Writ of Error Coram Nobis on January 17, 2013.  (Case No. 2:13-cv-01035, ECF Nos. 1, 4 and 5.)

---

[5]  The undersigned notes that this petition also included a claim similar to the petitioner's present claim that Judge Copenhaver improperly engaged in the plea negotiation process.

## STANDARD OF REVIEW

### *The writ of error coram nobis*

The writ of error *coram nobis* derives from British common law.  Judgments before the king's bench that were erroneous in matters of fact could be reversed through use of the writ, which, translated, means "before us."   3 William Blackstone, Commentaries, *406 n.5.  At common law, the writ was issued out of chancery; however, "the procedure by motion in the case is now the accepted American practice."  *United States v. Morgan*, 346 U.S. 502, 506 n.4 (1954).

In American legal proceedings, the writ of error *coram nobis* stems from the all-writs provision of the Judicial Code.  *Id.* at 506.  That provision, 28 U.S.C. § 1651(a), provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  While its validity had at one point become unclear, use of the writ in criminal cases was endorsed by the Supreme Court in *Morgan*; Justice Minton tartly noted in his dissent in that the majority had "resurrecte[d]" the writ "from ... limbo."  *Morgan*, 346 U.S. at 513 (Minton, J., dissenting).  However, in its rejuvenation of the writ, the majority cautioned that "[c]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice," *id.* at 511, and that "*coram nobis* [only] included errors 'of the most fundamental character'" *id.* at 512 (quoting *United States v. Mayer*, 235 U.S. 55, 69 (1914)).  More recently, it has been described as "an extraordinary tool to correct a legal or factual error."  *United States v. Denedo*, 556 U.S. 904, 912-913 (2009).

14

Today, the writ is "'broader than its common-law predecessor' and 'can issue to redress a fundamental error . . .   as opposed to mere technical errors.'" *Bereano v. United States*, 706 F.3d 568, 576 (4th Cir. 2013) (quoting *Denedo*, *supra*, 556 at 911). The Fourth Circuit has adopted the following standard of review for considering a writ of error *coram nobis*:

> In order for a district court to reach an ultimate decision on *coram nobis* relief, a petitioner is obliged to satisfy four essential prerequisites.  First, a more usual remedy (such as habeas corpus) must be unavailable; second, there must be some valid basis for the petitioner having not earlier attacked his convictions; third, the consequences flowing to the petitioner from his convictions must be sufficiently adverse to satisfy Article III's case or controversy requirement; and finally, the error that is shown must be "of the most fundamental character."

*Id. (*quoting *United States v. Akinsade*, 686 F.3d 248, 252 (4th Cir. 2012)).

Thus, writs of error *coram nobis* are "essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction." *Fleming v. United States*, 146 F.3d 66, 89-90 (2d Cir. 1998).  "Courts may consider *coram nobis* petitions only where no other remedy is available and the petitioner presents sound reasons for failing to seek relief earlier.  *United States v. Mills*, 271 F.3d 1201, 1204 (4th Cir. 2000).[6]

The petitioner's challenge to the imposition of the 24-month sentence for the violation of terms of his supervised release may properly be reviewed under the standards for *coram nobis* relief because the petitioner has effectively served that sentence, and is no longer "in custody" on the revocation of his supervised release.

---

[6]   In *Carlisle v. United States*, the Supreme Court re-emphasized that "it is difficult to conceive of a situation in a federal criminal case today where a [writ of error *coram nobis*] would be necessary or appropriate."  *See also United States v. Smith*, 331 U.S. 369 n.4 (1947).

<u>*Other collateral attacks*</u>

A writ of error *coram nobis* may not be used to attack a sentence currently being served. *See United States v. Little*, 608 F.2d 296 (8th Cir. 1979) (Although the remedies are substantially equivalent, the proper remedy for a petitioner who is in custody on the conviction or sentence being challenged is a motion for post-conviction relief under section 2255, not a *coram nobis* petition); *see also United states v. Brown*, 243 F.3d 541, 2001 WL 127700 (4th Cir., Feb. 15, 2001) (unpublished). Such is the case with the petitioner's challenges concerning the two-point enhancement of his criminal history, his claim that the District Judge improperly engaged in the plea process, and his Confrontation Clause claim.

These claims challenge the basis for the petitioner's 288-month sentence, which he is currently serving, and do not affect the 24-month revocation sentence that he has already served. Accordingly, these claims must be brought, if at all, in a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 or in a habeas corpus petition under 28 U.S.C. § 2241, assuming that the conditions set forth in 28 U.S.C. § 2255(e) are met; that is, that relief under section 2255 would be inadequate or ineffective. As will be explained in greater detail *infra*, the petitioner is not eligible for relief under either of those statutes.

<u>*Procedural Default*</u>

Before the petitioner's conviction can be attacked collaterally, he must overcome the significant procedural hurdle of showing that he could not have raised the issues he now wishes to challenge on direct appeal. The failure to raise a claim on direct appeal generally results in procedural default barring collateral review. *See Bousley v. United States*, 523 U.S. 614, 621 (1998).

Where procedural default has occurred, the "cause and actual prejudice" standard may be applied to overcome the default. *United States v. Frady*, 456 U.S. 152, 167 (1982) (citing *Davis v. United States*, 411 U.S. 233 (1973); *Francis v. Henderson*, 425 U.S. 536 (1976); *Wainwright v. Sykes*, 433 U.S. 72 (1977)). "Under this standard, to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Frady*, 456 U.S. at 168. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A showing that the factual or legal basis for a claim was not reasonably available to counsel can constitute cause. *Id.* (citing *Reed v. Ross*, 468 U.S. 1, 16 (1984)).

In the alternative, a petitioner who has procedurally defaulted can show that he is actually innocent. *Murray*, 477 U.S. at 496. Actual innocence "means factual innocence, not mere legal insufficiency." *Bousley,* 523 U.S. at 623. To prevail under an actual innocence theory, a petitioner must show in light of "all the evidence," that "it is more likely than not that no reasonable juror would have convicted him ...." *Schlup v. Delo*, 513 U.S. 298, 327, 329 (1995). An actual innocence examination encompasses both charged counts, as well as counts that the government may have forgone. *Bousley*, 523 U.S. at 624.

## ANALYSIS

### A.     The petitioner's challenges to his 24-month revocation sentence

The petitioner's *coram nobis* petition first claims that the District Court was without subject matter jurisdiction pursuant to 18 U.S.C. §§ 3563, 3564 and 3565 and Rule 32.1 of the Federal Rules of Criminal Procedure (all of which pertain to the imposition and revocation of a term of probation or supervised release) to sentence the petitioner to a term of 24 months in prison for a violation of the terms of his supervised release, once the government agreed to dismiss the charges that arose out of that conduct in the petitioner's plea agreement.   (ECF No. 1 at 1.)   Furthermore, the petitioner asserts as follows:

> The petitioner had an expiration date of supervised release [of] April 21, 1996 from the above style case number when the petitioner plead guilty to a charge beyond that expiration date and a new criminal docket number emerges, 2:96-cr-00066-1, the original expiration date applies when the charges were dismissed and the petitioner plead guilty to a charge that was lodged in an indictment after the expiration date of April 21, 1996.  That charged occurred on the date of April 25, 1996.

> A trial judge's review of a plea agreement beyond that is not a forum for consideration of the factual basis of the abandoned charges, any determination as to a defendant's guilt or innocence is restricted to the specific charges to which the defendant has agreed to plead guilty.

(Case No. 2:13-cv-01035, ECF No. 1 at 1-2.)   The petitioner claims that this was a fundamental error in the proceedings that should render his judgment invalid.  (*Id.* at 2.)

### *Custody status and other forms of available relief*

Despite the fact that the petitioner is still in federal custody, he has already served and effectively discharged the 24-month sentence imposed as a result of the revocation of his term of supervised release.  Therefore, the undersigned proposes that

the presiding District Judge **FIND** that the petitioner is no longer "in custody" with regard to his 24-month sentence upon the revocation of his supervised release.  Because the petitioner is no longer "in custody" on his 24-month revocation sentence, it would appear that a more usual remedy (*i.e.*, habeas corpus relief) is not presently available. Thus, the undersigned further proposes that the presiding District Judge **FIND** that petitioner can satisfy the first criterion for *coram nobis* relief.

<u>Failure to previously attack this sentence</u>

The second requirement for obtaining *coram nobis* relief is that valid reasons exist for the petitioner's failure to previously attack the subject conviction or sentence. The petitioner cannot satisfy this requirement.

The issue of whether the District Court improperly imposed the 24-month sentence for the supervised release violations arising out of the same conduct that formed the basis of charges in the indictment that were dismissed by the government in accordance with the plea agreement, is an issue that should have been raised by the petitioner in his direct appeal of that judgment in 1997.  The petitioner failed to address that issue in his appeal, or in his subsequent section 2255 motion, and, therefore, he has procedurally defaulted that claim.

The petitioner also appears to assert that his counsel provided ineffective assistance at sentencing.  Although he doesn't specify how his counsel was allegedly ineffective, it can be inferred from the petition that the petitioner is challenging his counsel's failure to argue that the petitioner was deemed innocent of the alleged supervised release violations by virtue of the dismissal of the charges in the new indictment that arose out of the same conduct.  (*Id.* at 2.) Noting that claims of ineffective assistance of counsel are generally addressed through collateral proceedings,

19

rather than on direct appeal, it should be emphasized that the petitioner failed to raise any claims of ineffective assistance of counsel in his prior section 2255 motion. Thus, he has also procedurally defaulted those claims.

Therefore, in order for this federal court to entertain these claims, the petitioner must establish either cause for the procedural default and actual prejudice resulting therefrom, or actual innocence. The petitioner did not specifically address his failure to raise any of these claims in his direct appeal or his prior section 2255 motion; thus, he has not provided any justification for his procedural default of these claims. Construing the petitioner's petition liberally, however, the undersigned will treat the petitioner's allegations of ineffective assistance of counsel, and his claim that he is actual innocent of the alleged supervised release violations, as his bases for cause and prejudice, or a miscarriage of justice, to overcome his procedural default of his claim that the imposition of the 24-month sentence was a fundamental error that would now entitle him to *coram nobis* relief.

The petitioner has not sufficiently demonstrated that his counsel provided ineffective assistance. Even if the petitioner's counsel failed to object at sentencing to the imposition of the 24-month consecutive revocation sentence and failed to raise any claims concerning the propriety of that sentence in the petitioner's direct appeal, the petitioner cannot now demonstrate that he was entitled to any relief concerning that sentence.

The violations alleged in the revocation petition are separate and distinct charges from those alleged in the indictment, and were subject to a different standard of review and a different sentence. The government did not agree to the dismissal of the

revocation petition.  Therefore, the petitioner cannot show prejudice from his counsel's failure to preserve any alleged error and challenge the revocation sentence on appeal.

Furthermore, even if the petitioner could establish "legal innocence" based upon the dismissal of the charges that arose out of the petitioner's alleged conduct on April 9 and April 16, 1996, in order to establish "actual innocence" to overcome his procedural default, the petitioner must demonstrate that he is factually innocent of the conduct. The petitioner has not demonstrated that he did not engage in the conduct that formed the basis of the supervised release revocation petition; rather, at most, the petitioner has only alleged that the charges in the revocation petition are "legally insufficient" in light of the dismissal of the indictment counts arising out of the same conduct.  Moreover, as noted in *Bousley*, *supra*, in cases where the government has foregone other charges in the course of plea bargaining, a "petitioner's showing of actual innocence must also extend to those charges."  523 U.S. at 624.

The undersigned further proposes that the petitioner's assertion that the United States Probation Officer improperly engaged in the investigation and arrest of the petitioner on the supervised release violations, and that such conduct violated the petitioner's Fourth Amendment rights is also procedurally defaulted and utterly frivolous.  It is the role of a United States Probation Officer to monitor the conduct of a defendant on supervised release to ensure their compliance with the terms and conditions placed on them by the court.  When a probation officer has probable cause to believe that a defendant has violated any of those terms and conditions, it is the responsibility of the probation officer to file a petition alleging those violations in order for the court to determine whether the defendant's term of supervised release should be revoked.  Such was the case here.

To the extent that the petitioner alleges that Mr. Zutaut's conduct somehow violated his Fourth Amendment rights, such a claim should have been addressed at the time of the revocation proceedings, in the appeal thereafter, or in a collateral proceeding under section 2255. Petitioner took none of those actions.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that the petitioner cannot meet the "cause and prejudice" standard to overcome his procedural default to have these issues addressed by the court in a *coram nobis* petition. Nor can he establish that he is actually innocent of the supervised release violations or demonstrate any miscarriage of justice arising out of the revocation of his term of supervised release and imposition of a 24-month consecutive sentence thereon.

Because the petitioner cannot overcome his procedural default of these claims, the court need not address whether the petitioner can satisfy the remaining criteria for *coram nobis* relief. The undersigned further proposes that the presiding District Judge **FIND** that the petitioner is not entitled to *coram nobis* relief on any of his claims related to the revocation of his supervised release and the imposition of a 24-month sentence for those alleged violations.

**B.      The petitioner's challenges related to his 288-month sentence.**

The petitioner's other claims in his *coram nobis* petition and the addenda thereto relate to his conviction, pursuant to a guilty plea, on Count Six of the indictment in Case No. 2:96-cr-00066, and the imposition of a 288-month consecutive sentence on that charge. Because the petitioner is presently serving that sentence, he is ineligible for *coram nobis* relief on any claims related thereto. Liberally construing the petitioner's claims, however, the undersigned will address whether the petitioner is entitled to any other form of post-conviction collateral relief on these claims.

22

A motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 is ordinarily the appropriate means for challenging a federal conviction or sentence that is presently being served.   However, in very limited circumstances, review may be available under 28 U.S.C. § 2241 when section 2255 provides no adequate remedy.  *See In re Jones*, 226 F.3d 328, 333-34 (4th Cir. 2000); *United States v. Pregent*, 190 F.3d 279, 284 n.6 (4th Cir. 1999).  The fact that a claim is procedurally or time-barred does not make section 2255 relief inadequate.  *See In re Vial*, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997).  Rather, a petitioner must be able to show: "(1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law."  *Jones*, 226 F.3d at 333-34.

The petitioner raises the following claims concerning his 288-month sentence:

1.      The District Court improperly imposed a 2-point enhancement of the petitioner's criminal history;

2.      The District Court improperly engaged in the plea-bargaining process, resulting in a less favorable plea for the petitioner; and

3.      The District Court violated the petitioner's Confrontation Clause rights by failing to require the government to call the lab technician who certified the drug test results as a witness to confirm the identity of the substance allegedly possessed and distributed by the petitioner.  The undersigned will address each claim in turn.

*Criminal history computation*

The petitioner contends that, in calculating the 288-month sentence, the District Court improperly imposed a 2-point enhancement of his criminal history based upon the incorrect assertion that the conduct that formed the basis of Count Six of the indictment occurred while the petitioner was on supervised release. The petitioner's term of supervised release expired on April 21, 1996, and the offense of conviction occurred on April 25, 1996. (ECF No. 1 at 2.)

The petitioner procedurally defaulted this claim as well, as he failed to object to this calculation at the time of his sentencing, and failed to raise this issue in his direct appeal or in his subsequent section 2255 motion. Even if the petitioner could demonstrate cause and prejudice to overcome this procedural default, this claim lacks merit. The petitioner was found to be a career offender (another finding to which the petitioner failed object at sentencing, or challenge on appeal or collateral review). By virtue of his career offender designation, under the Sentencing Guidelines, the petitioner was automatically assigned a base offense level of 34 and a criminal history category of VI. Thus, any alleged error in the calculation of his criminal history category without the career offender designation was harmless and does not entitle the petitioner to any relief.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that the petitioner is not entitled to any collateral relief on this claim.

*The District Court's rejection of the first plea agreement*

The petitioner also claims that, by rejecting the initial plea agreement between the petitioner and the government, the District Judge improperly engaged in the plea-bargaining process, resulting in a guilty plea that was prejudicial to the petitioner. This

24

claim is similarly fruitless.  The petitioner failed to address this issue at all on appeal or in his subsequent section 2255 motion.  However, it does appear that the petitioner attempted to raise this claim for the first time in his original jurisdiction habeas petition filed in the Court of Appeals.  Therefore, if this claim is not procedurally defaulted, it has already been denied by the appellate court.  Accordingly, this court may not reconsider this claim in the present collateral attack.  *See Sun v. United States*, 342 F. Supp.2d 1120 (N.D. Ga. 2004) (A writ of error *coram nobis* cannot be used to relitigate matters already put into issue); *see also Boekenhaupt v. United States*, 537 U.S. 1182, 1183 (4th Cir. 1976) (a previously litigated claim may not be re-addressed through collateral review).  Furthermore, the petitioner cannot demonstrate prejudice to overcome this default, as the District Judge had discretion to reject the first guilty plea if he felt that it did not reasonably reflect the defendant's recidivist criminal conduct. Fed. R. Crim. P. 11(c)(5).

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that the petitioner is not entitled to any collateral relief on this claim.

<u>*The petitioner's Confrontation Clause claim*</u>

The petitioner's claim that the District Court violated his rights under the Confrontation Clause of the Sixth Amendment by failing to require the government to call the lab technician who conducted the testing on the drugs to establish that the substance was, in fact, cocaine base, so as to establish the required elements of 21 U.S.C. § 841(a)(1), is also an issue that should have been raised in an appeal or a timely section 2255 motion.  The petitioner's Second Addendum addresses this claim, and cites to the Supreme Court's decisions in *DePierre v. United States*, 131 S. Ct. 2255 (2011),

*Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011), and *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) to support his argument.

In *DePierre*, the Court merely clarified that the term "cocaine base" applies not only to "crack" cocaine, but any form of cocaine in its basic state. Since the petitioner's indictment referred to "cocaine base, also known as 'crack,'" the *DePierre* ruling has no effect on the petitioner's conviction. In *Melendez-Diaz* and *Bullcoming*, the Court extended the ruling in *Crawford v. Washington*, 541 U.S. 36 (2004) to require the analysts who performed forensic testing to testify concerning their test results, or to have been previously subjected to cross-examination by the defendant. By virtue of his guilty plea, the petitioner admitted to distributing cocaine base, also known as "crack," and stipulated to the quantity of cocaine base he possessed. Thus, the testimony of a lab technician was not required.

Moreover, none of these Supreme Court rulings involved a watershed rule of criminal procedure. Thus, none has been found to be retroactively applicable on collateral review. *See, Wharton v. Bockting*, 549 U.S. 406, 421 (2007) (*Crawford* decision did not announce a "watershed rule" of criminal procedure such as could be applied retroactively on collateral review); *Gilchrist v. United States*, 2012 WL 4520468 *10-11 (D. Md., Sept. 27, 2012); *Adams v. United States*, 2011 WL 1792562 (*Melendez-Diaz,* as an application of *Crawford,* is not retroactively applicable on collateral review). Even assuming that he could establish that any of these decisions is retroactively applicable on collateral review, the petitioner was required to seek relief under section 2255 within one year of the applicable decision, which he failed to do.[7]

---

[7]   Section 2255(f)(3) provides that the one year statute of limitations applicable to section 2255 motions "shall run from the latest of - . . . (3) the date on which the right asserted was initially recognized by the

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the petitioner is not entitled to any collateral relief on this claim.

The petitioner is procedurally barred from relief on any of these claims under 28 U.S.C. § 2255.  Furthermore, he cannot demonstrate that he meets the criteria for review of these claims under 28 U.S.C. § 2241.  Moreover, the petitioner has failed to demonstrate that his convictions and sentences have resulted in any fundamental error or a miscarriage of justice.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the petitioner cannot establish that he is entitled to any post-conviction collateral relief on the claims related to his current conviction and sentence.

## RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** the petitioner's Petition for a Writ of Error Coram Nobis (Case No. 2:13-cv-01035, ECF No. 1; Case Nos. 2:91-cr-00055, ECF No. 124; Case No. 2:96-cr-00066, ECF No. 169) and its addenda (Case No. 2:13-cv-01035, ECF Nos. 4 and 5; Case No. 2:91-cr-00055, ECF Nos. 127 and 128; Case No. 2:96-cr-00066, ECF Nos. 172 and 173) and deny the petitioner any post-conviction collateral relief as requested in those documents.  It is further respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** this civil action with prejudice.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the

---

Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."

parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the district court and a waiver of appellate review by the circuit court of appeals.  *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Petitioner, and to transmit a copy to counsel of record.

 August 20, 2013

Dwane L. Tinsley
United States Magistrate Judge